UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| DANIEL KOCH, et al., | ) |
| | ) |
|    Plaintiffs, | ) |
| | ) |
| v. | )   Cause No. 1:14-CV-72-HAB |
| | ) |
| JERRY W. BAILEY TRUCKING, INC., | ) |
| and ESTATE OF JERRY W. BAILEY, | ) |
| | ) |
|    Defendants. | ) |

**OPINION AND ORDER**

When the parties settled, they left the Court to determine the award for Plaintiffs' attorney fees and costs. That issue is now fully briefed. (ECF Nos. 264, 269, 274). Plaintiffs have also, on order of this Court, provided an accurate accounting of their attorney fees using then-prevailing rates. (ECF No. 276). In total, Plaintiffs seek an attorney fee award of $201,820.00 and a costs award of $5,729.36.

The Court recognizes Plaintiffs' statutory right to attorney fees and costs. But the amount requested by Plaintiffs is not reasonable under the relevant factors. As a result, Plaintiffs will be awarded $70,000.00 in attorney fees and $3,836.09 in costs.

**A.  Procedural History**

This case began more than seven years ago with the filing of a complaint and, ten days later, an amended complaint. (ECF Nos. 1, 8). The amended complaint asserted a collective action for failure to pay overtime wages under federal law, a class action for failure to pay wages under Indiana law, and an individual action by Plaintiff Koch for failure to pay wages under Indiana law.

In May 2014, the parties filed a joint stipulation to conditionally certify both the class and collective actions. (ECF No. 28). But the parties did not define the class claims, requiring an order

from the Court directing them to do so. (ECF No. 29). The Court also had concerns, based on Plaintiffs' counsel Ronald Weldy's disciplinary history, whether Attorney Weldy could fairly and adequately represent the interests of the class. As a result, the parties were ordered to brief Attorney Weldy's competency as class counsel. (ECF No. 30).

In December 2014, the Court denied the parties' stipulation for certification. (ECF No. 35). The Court found that Attorney Weldy's disciplinary history, as well as his conduct in other cases before the Court, rendered him incapable of representing the class. After Plaintiffs moved to reconsider, the Court vacated its December 2014 Order. (ECF No. 51).

The parties then again stipulated to conditional certification (ECF No. 58), which stipulation was granted in June 2015. (ECF No. 59). Even so, the parties could not agree on the class definitions or how the opt-in notices were to be returned. The Court ultimately rejected Plaintiffs' proposed revisions to the class definitions, revised the definitions itself, and forbade potential class members from returning the opt-in forms by any means other than mail. (ECF No. 68).

Nearly two years into the litigation, Plaintiffs sought leave to amend their complaint to add another named plaintiff and another cause of action. (ECF No. 83). Defendants objected and the Court ultimately agreed with Defendants, finding that the proposed amendment had been unreasonably delayed and would be prejudicial to Defendants. (ECF No. 92).

For the next two years there was little court action. It appears from the docket that the parties spent this time conducting discovery and engaging in settlement discussions. Those discussions included an unsuccessful judicial settlement conference with Magistrate Judge Susan Collins. (ECF No. 118).

In April 2018, Defendants moved to decertify the class and collective actions. (ECF No. 126). Defendants also moved for summary judgment. (ECF No. 128). Plaintiffs cross-moved for summary judgment while also opposing the motion to decertify. (ECF Nos. 149). Following the filing of responses, replies, sur-replies, and motions to strike, the Court decertified the class and collective actions in May 2019. (ECF No. 182). The Court found that Plaintiffs overstated the number of potential class members at the certification stage and that, considering the actual number of opt-ins, the suit could be maintained as individual actions.

After another amendment to the complaint in December 2019, the parties again cross-moved for summary judgment. The Court entered an order on the cross-motion in August 2020. (ECF No. 225). In summary, the Court found that Defendant Linda Bailey could not be held personally liable, but that the remaining Defendants had violated both state and federal wage laws. The Court further found that Jerry Bailey's personal liability, as well as Defendants' intent to violate wage laws, were matters for a jury to determine.

Armed with this order, the parties again participated in a judicial settlement conference with Magistrate Judge Collins in November 2020. (ECF Nos. 236–37). This time, settlement was reached. The total amount recovered by all Plaintiffs was $60,642.69, roughly 60% of the damages claimed in affidavits submitted as part of the summary judgment briefs. Plaintiffs moved three times to extend their deadline to move for attorney fees and costs. Plaintiffs then determined that they needed a final judgment before they could collect attorney fees and costs. After more delays, the Court approved the parties' settlement agreement in January 2021 and entered judgment for Plaintiffs two months later following the execution of the settlement agreements. (ECF No. 260).

Plaintiffs moved for attorney fees in April 2021. After continuances on both sides, the motion was fully briefed in late-June 2021. The Court reviewed the briefs and ordered Plaintiffs

to submit attorney fees reflecting the rates in effect at the time services were rendered. That accounting has now been tendered to the Court.

**B.     Legal Analysis**

**1.     *Attorney's Fees***

The award of attorney fees to a prevailing plaintiff in a Fair Labor Standards Act ("FLSA") claim is mandatory. 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."). Still, district courts have "wide latitude" in determining the amount of the fee. *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 406 (7th Cir. 1999).

**a.     *Reasonable Billing Rate***

Generally, when calculating attorney's fees, a district court will determine a "lodestar amount by multiplying the reasonable number of hours worked by the market rate." *Bankston v. State of Ill.*, 60 F.3d 1249, 1255 (7th Cir. 1995). The market rate is "the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 519 (7th Cir. 1993) (citation omitted). "The attorney's actual billing rate for comparable work is 'presumptively appropriate' to use as the market rate." *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1310 (7th Cir. 1996) (citation omitted). If the district court cannot determine the attorney's actual billing rate because, for example, the attorney has no fee-paying clients, then the district court should look to the next best evidence. *Id*. The next best evidence of an attorney's market rate includes evidence of rates other attorneys in the area charge paying clients for similar work and evidence of fee awards the attorney has received in similar cases. *Id*. at 1310–12. The burden of proving the market rate is on the party seeking the fee award. *See McNabola*, 10 F.3d at 518. That said, once an

4

attorney provides evidence establishing his market rate, the opposing party has the burden of proving why a lower rate should be awarded. *See People Who Care*, 90 F.3d at 1313.

Attorney Weldy has provided billing rates to the Court for himself, his associate, and his paralegal. Attorney Weldy's rate was between $325.00 and $400.00 per hour over the seven years of this case, his associate's $200.00 per hour, and his paralegal's between $125.00 and $150.00 per hour. That said, there is no evidence that Attorney Weldy has ever charged any client these amounts. Recognizing this, Attorney Weldy has provided the Court with affidavits from two attorneys, Christopher Myers and Robert Kondras, Jr., both of whom testified that their current rates are $400.00 per hour.

The Court sees two problems with these affidavits. First, Attorney Myers regularly appears before this Court, so the Court is familiar with his practice. Attorney Myers' employment practice is mainly, if not entirely, plaintiff-based and contingent. The Court doubts that any of Attorney Myers' clients have ever paid the claimed $400.00 per hour rate.[1] His affidavit, then, does little to help the Court determine a reasonable billing rate.

Attorney Kondras' affidavit is only marginally more helpful. Attorney Kondras' office is in Terre Haute, Indiana, more than two hundred miles from the Fort Wayne Federal Courthouse. He, too, appears to represent employees exclusively[2], presumably on a contingent fee basis. Attorney Kondras does identify cases in which he was awarded a $400.00 billing rate, but none of those cases are from the Northern District; three are from the Southern District of Indiana[3], and one from California. Those awards are helpful, but ultimately limited by geographical differences.

---

[1] In 2015, this Court found that a reasonable hourly rate for Attorney Myers was $350.00. *Myatt v. Gladieux*, 2015 WL 6455387 (N.D. Ind. Oct. 23, 2015). In that case, Attorney Myers also claimed that his hourly rate was $400.00. *Id*. at 2.
[2] https://www.hkmlawfirm.com/attorney/kondras-robert-p-jr/
[3] The cases in which Attorney Weldy was awarded his claimed rates suffer from the same problem, as all identified cases are from the Southern District of Indiana. (*See* ECF No. 264 at 9–10).

The only evidence this Court has of a rate that a client paid comes from Defendants' counsel, Theodore Storer. Attorney Storer's billing rate was between $300.00 and $350.00 per hour over the course of this litigation. These numbers strike the Court, who practiced in the employment law area on behalf of both employers and employees before taking the bench, as far more reasonable in this district. *See Batt v. Micro Warehouse, Inc.*, 241F.3d 891, 895 (7th Cir. 2001) ("Although the district court must consider [fee awards and fees charged by practitioners of comparable skill and experience], it is entitled to determine the probative value of each submission and must arrive at its own determination as to a proper fee.") (quotations omitted).

Because of how long this case has been pending, the Court must also consider how to accommodate for the time value of money. The Supreme Court has observed that courts have accounted for delay in payment "either by basing the award on current rates *or* adjusting the fee based on historical rates to reflect its present value." *Pennsylvania v. Delaware Valley Citizens Counsel for Clean Air*, 483 U.S. 711, 716 (1987) (emphasis added). While it is possible to find authority to the contrary, *see Matter of Cont'l Sec. Litig.*, 962 F.2d 566, 571 (7th Cir. 1992), "the courts in this circuit generally use current rates." *Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 255 n.5 (7th Cir. 1988).

Having determined that Attorney Storer's billing rate more accurately represents a reasonable hourly rate, the Court will follow the lead of its sister courts in applying current rates over the course of the entire litigation. Thus, the Court finds that the market rate for use in the lodestar calculation is $350.00 for each hour reasonably worked on this case.[4]

---

[4] Defendants do not challenge the billing rates for Attorney Weldy's associate or paralegal. Thus, the Court will accept those rates as reasonable.

**b.** *Hours Reasonably Worked*

Plaintiffs have no right to bill every hour spent on litigation to their opponent. Instead, a prevailing party must exercise "billing judgment" to "exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours" from bills to their own client. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). When reducing hours requested, the Court must provide "a concise but clear explanation." *Tomazzoli v. Sheedy*, 804 F.2d 93, 97 (7th Cir. 1986).

The Court has reviewed Attorney Weldy's billing submission line by line. Having done so, the Court has identified several areas where the hours claimed are "excessive, redundant, or otherwise unnecessary."

**i.** Adequacy of Class Counsel

Attorney Weldy did not come into this case with a clean slate before the Court. He has prior discipline for inattention to client matters and, perhaps more importantly, had mishandled (at least in the Court's estimation) a case then-pending before the Court. As a result, before the Court addressed the merits of the proposed class and collective actions, it questioned whether Attorney Weldy could act as class counsel. Attorney Weldy eventually convinced the Court of his competence and was permitted to stay on as Plaintiffs' counsel. He now seeks to shift fifteen of his own hours, and 16.1 of his associate's hours, to Defendants for time spent addressing the Court's concerns.

The Court does not believe that these hours should be part of a fee award. Attorney Weldy did not advance the interests of his clients by fighting to preserve his appearance. To the contrary, the concerns over his abilities delayed the case by nearly six months. Instead, Attorney Weldy advanced his own interests in future fees. This was a reasonable business decision on his part. That

said, given the bases of the Court's concerns, it does not believe that Defendants should be made to bear the costs for Attorney Weldy's financial self-preservation. These hours will be deducted from the lodestar calculation.

**ii.** Creating a Damages Spreadsheet

From October to December 2016, Attorney Weldy's paralegal billed 26.4 hours for entering information into a damages spreadsheet. Some eight months later, Attorney Weldy spent 19.2 hours finalizing the spreadsheets. These hours, and more devoted to damages, were challenged by Defendants in their response brief. (ECF No. 269 at 6). Unfortunately, no other information or argument related to these hours was provided in Plaintiffs' reply.

While the number of paralegal hours seem excessive on their face, it is the timing of the hours that concerns the Court the most. Remember, this time was spent before the decertification of the class and collective actions. It is likely, then, that some of those hours are devoted to entering information for individuals who did not become plaintiffs in this case. Plaintiffs have made no effort to more specifically identify the tasks undertaken during these hours, complicating the Court's task. The Court is, then, left to use its best guess in determining the appropriate number of hours to credit. Since the actual number of plaintiffs was around one-fifth of the number of class members originally represented to the Court, and since the challenged hours were spent while the class and collective actions were still certified, the Court finds that the same reduction is appropriate. As a result, the Court will permit five hours of paralegal time for creating the damages spreadsheet to be transferred to Defendants.

The Court also questions how, and why, Attorney Weldy spent nearly twenty hours "finalizing" spreadsheets created by his paralegal. Was he rechecking every entry? Confirming the math? True, much of this time is block-billed with tasks like "analyze documents produced" and

"calculate damages for class members," but these seem to be little more than double-checking the work of the paralegal. The "documents produced" were presumably used by the paralegal in creating the spreadsheet and, if the spreadsheet was accurate, "calculating damages" should have involved little more than looking to the bottom line.[5] Ultimately, the lack of detail in these entries leads the Court to question the amount of time appropriately billed to Defendants. *See Valerio v. Total Taxi Repair & Body Shop, LLC*, 82 F. Supp. 3d 723, 744–45 (N.D. Ill. 2015) ("[c]ourts should not permit recovery for administrative or clerical tasks, such as organizing file folders, preparing documents, and copying documents."). The Court finds that 19.2 hours is excessive but will allow five hours of attorney time for reviewing the documents and spreadsheets.

**iii.** Summary Judgment Practice

There were two rounds of summary judgment practice in this case: one pre-decertification and one post-decertification. By the Court's calculations, Attorney Weldy billed sixty-one hours (not including motions related to briefing schedules or evidentiary issues) during the first round of briefing. This briefing was ultimately rendered moot; when the Court decertified the class and collective actions, it denied the cross-motions for summary judgment as moot. (ECF No. 195). In the second round, Attorney Weldy billed another 30.8 hours, again exclusive of ancillary issues. In total, Attorney Weldy billed nearly ninety-two hours to summary judgment briefs alone.

The Court has reviewed the briefs both when it ruled on summary judgment and now in the context of the fee claim. Attorney Weldy's briefing was not inconsequential. His primary brief in the first round was forty-eight pages, forty-three pages in the second round. Even so, the majority of both filings was devoted to the recitation of facts. The legal arguments took up only

---

[5] Plaintiffs' reply asserts that some calculations "had to be redone on multiple occasions because a flaw with an equation to calculate hours or damages was found and remedied." (ECF No. 274 at 8). This is an explanation, but not a basis for holding Defendants responsible for the initial errors.

sixteen pages in the first brief, fourteen in the second. The Court is not discounting the importance of facts in summary judgment proceedings, but when Plaintiffs' briefs are looked at in this light, the length becomes less remarkable.

That said, the Court is mostly concerned by the similarities between the two rounds of briefing. If one compares ECF Nos. 150 and 222, the primary summary judgment briefs, they will find that the briefs are largely identical. There are differences, of course: the second brief incorporates additional facts from intervening depositions, for instance. All the same, the legal issues were the same in both rounds of briefing. Given the similarities, the Court questions how Attorney Weldy can justify more than thirty hours to prepare a second round of briefing that was largely a cut-and-paste version of the first.

Nor were the issues particularly complex. If one omits the discussion of the standard of review, Plaintiffs' primary brief for the second round of briefing cites just five cases when discussing the merits of the claims, and another four when discussing tolling. (ECF No. 222). The factual underpinning for Plaintiffs' claims, that they were not paid for pre- and post-trip inspections, was largely undisputed. These briefs did not write themselves, but they were also not so difficult that they should have taken four full days of effort to draft.

As a result, the Court finds that sixty hours were reasonably spent by Plaintiffs briefing the summary judgment issues. Thus, 31.8 hours will be disallowed.

Applying these adjustments to Plaintiffs' claimed hours, and incorporating hours that Plaintiffs abandoned in their reply along with more hours billed for preparing the fee briefs, the Court finds that these hours are properly billable to Defendants:

    Attorney Weldy:         362.4 hours
    Attorney Derringer:     8.1 hours
    Paralegal:              43.2 hours

Multiplying these hours by the rates above, the Court finds that the lodestar calculation is $126,840 for Attorney Weldy, $1,620 for Attorney Derringer, and $6,480 for the paralegal. In total, the lodestar figure is $134,940.

**c.**     *Modifications to the Lodestar Calculation*

With the lodestar figure calculated, the Court now turns to the parties' requested modifications to that figure. Plaintiffs assert that the lodestar figure should be enhanced by fifty dollars per hour on account of what they call the "excellent result" obtained. (ECF No. 274 at 7). Not so, Defendants counter, asserting instead that the lodestar figure should be reduced because of the decertification of the class and collective actions. (ECF No. 269 at 3–5). The Court agrees with Defendants.

The United States Supreme Court has repeatedly said that enhancements to the lodestar figure may be awarded only in "rare" and "exceptional" circumstances. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010) (collecting cases). This is because "the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee." *Pennsylvania v. Delaware Valley Citizens Council for Clean Air*, 478 U.S. 546, 566 (1986). The quality of an attorney's performance generally should not be used to adjust the lodestar "[b]ecause considerations concerning the quality of a prevailing party's counsel's representation normally are reflected in the reasonable hourly rate." *Id*.

On the other hand, "[i]f ... a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Hensley*, 461 U.S. at 436. In such a case, the district court has the discretion to reduce the modified lodestar amount to reflect the degree of success obtained. *See id*. at 436–37.

11

As did the district court in *Dominguez v. Quigley's Irish Pub, Inc.*, 897 F. Supp. 2d 674 (N.D. Ill. 2012), the Court finds the Second Circuit's decision in *Barfield v. New York City Health and Hospitals Corp.*, 537 F.3d 132 (2d Cir. 2008) to be on point. There, the plaintiff sued on behalf of herself and others similarly situated for violations of the overtime provisions of the FLSA. The district court denied the request to certify the collective action. After the plaintiff's individual case was settled, she requested statutory attorney fees. Among other reductions, the district court reduced the lodestar figure by fifty percent based on the failure of the collective action.

Challenging on appeal the reduction in a manner nearly identical to Plaintiffs here, the plaintiff in *Barfield* argued that "a motion for FLSA collective action certification is not a claim and, thus, failure on such a motion does not support a fee reduction." *Id*. at 152. The Second Circuit rejected this argument.

> A district court's assessment of the "degree of success" achieved in a case is not limited to inquiring whether a plaintiff prevailed on individual claims. Both the quantity and quality of relief obtained, as compared to what the plaintiff sought to achieve as evidenced in her complaint, are key factors in determining the degree of success achieved. Indeed, this comparison promotes the court's central responsibility to make the assessment of what is a reasonable fee under the circumstances of the case.

*Id*. (citations and quotations omitted). Finding that the "plaintiff's primary aim in this litigation, as reflected in her complaint and in the first four months of litigation . . . was to certify a collective action," the Second Circuit found that the fifty percent reduction was appropriate based on the plaintiff's limited success: "[i]n this respect the district court got it exactly right: the reasonableness of the attorney's fees incurred linked directly to the ability to maintain the case as an FLSA collective action." *Id*. at 153.

In many respects, the Court believes that the class and collective actions were more "primary" in this case than in *Barfield*. While the collective action in *Barfield* was a focus for only

four months, the parties here labored under the class and collective action for five *years*. Two out of the three counts in the Amended Complaint are addressed solely to the class and collective actions. But perhaps the most compelling evidence is the speed with which this case settled once the class and collective actions were decertified. While the case languished as a class and collective action, the parties resolved this matter in only eighteen months once the specter of class liability was removed. The individual claims were never the drivers of this case for either side.

Plaintiffs, understandably, focus on the initial certification. They assert that "[g]etting a class and/or collective action certified is a rare skill amongst Hoosier attorneys." (ECF No. 264 at 12). Maybe, but certification was not exactly one of the twelve labors of Hercules. The request for certification was jointly made. The only reason for the Court's initial rejection of the certification request was its misgivings about Attorney Weldy. When one further considers that the certification was based on a wildly inaccurate estimate of potential class members, Attorney Weldy's demand for plaudits rings hollow.

At base, the facts of the matter are that Plaintiffs recovered only a fraction of the damages claimed in the summary judgment briefs[6], which were themselves only a fraction of the recovery anticipated when suit was filed. This is not an "excellent result" for Plaintiffs. To the contrary, it reflects "success" that merits a downward modification to the lodestar figure. As a result, the Court finds that an award of $70,000.00 represents a reasonable fee in this case. It closely approximates the actual recovery obtained and reflects both the lodestar figure and the limited success achieved.

**2.  Costs**

As Defendants note, recoverable costs are listed in 28 U.S.C. § 1920. Those costs are:

(1) Fees of the clerk and marshal;

---

[6] Plaintiffs have moved to strike references in Defendants' damages brief to Plaintiffs' demands at settlement. (ECF No. 277). The Court has not considered that evidence in reaching its conclusion, and therefore DENIES the motion as moot.

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title; [and]

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

*Id*. A district court may not tax a prevailing party's costs to the losing party unless the specific expense is authorized by this statute. *Little v. Mitsubishi Motors N.A., Inc.*, 514 F.3d 699, 701 (7th Cir. 2008).

There is agreement between the parties that $3,836.09, representing the filing, videographer, and court reporter fees, are properly taxed. The remaining amount in dispute, $1,893.27, represents "parking, hotel stays, mileage, postage, and copies[7]." (ECF No. 274 at 9). Plaintiffs do not argue that these are costs authorized by 28 U.S.C. § 1920. Instead, they claim, citing Indiana authority, that the amount should be "added to the attorney fee requested since they are costs normally billed with attorney fees." (ECF No. 274 at 9).

In line with the directive in *Little*, the Court will not assess the extra-statutory costs to Defendants. Moreover, without any federal authority authorizing the taxing of costs as fees, the Court declines Plaintiffs' invitation to do so. Thus, the Court will assess costs in the amount of $3,836.09.

---

[7] The Court recognizes that copies can qualify as costs under 28 U.S.C. § 1920(4), but Plaintiffs have not tried to show that the copies were "necessarily obtained for use in the case."

14

**C.** **Conclusion**

For these reasons, Plaintiffs' Motion for an Award of Statutory Attorney's Fees, Costs and Designation of Evidence (ECF No. 263) is GRANTED in part. Attorney's fees of $70,000.00 and costs in the amount of $3,836.09 are awarded in favor of Plaintiffs and against Defendants. Plaintiffs' Motion to Strike Portions of Defendants' Opposition (ECF No. 277) is DENIED as moot.

SO ORDERED on July 16, 2021.

                                          s/ Holly A. Brady
                                          JUDGE HOLLY A. BRADY
                                          UNITED STATES DISTRICT COURT