UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| DANIEL KOCH, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Cause No. 1:14-CV-72-HAB |
| ) | |
| JERRY W. BAILEY TRUCKING, INC., ) | |
| and ESTATE OF JERRY W. BAILEY, ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

Seventy thousand dollars will buy you a fully equipped 2022 Chevrolet Camaro ZL1 convertible, capable of propelling you from zero to sixty miles per hour in a mere 3.5 seconds. What it will not buy you, apparently, is a satisfactory conclusion to this litigation. After this Court awarded Attorney Weldy $70,000.00 in fees and costs, after he accepted and deposited Defendant's check in that amount, and after he consented to Defendant's filing of a Notice of Satisfaction of Judgment and Order (ECF No. 279), Attorney Weldy moved under Fed. R. Civ. Proc. 52(b) and 59(e) to get more money in the door. The Court finds no merit in the motion.

**I.     Legal Standard**

Conspicuously missing from Plaintiffs' briefing is any recognition of the steep legal climb their motion faces. A motion under Rule 52(b) "is not intended to allow the parties to relitigate old issues, to advance new theories, or to rehear the merits of a case." *Diebitz v. Arreola*, 834 F. Supp. 298, 302 (E.D. Wis. 1993) (quoting *Renfro v. City of Emporia, Kansas*, 732 F. Supp. 1116, 1117 (D. Kan. 1990). Such a motion is appropriate only when the district court has made a manifest error of law or fact, when there is newly discovered evidence, or when a change in the law has occurred. *Diebitz*, 834 F. Supp. at 302 (collecting cases).

Similarly, a Rule 59(e) motion "may be granted only if there has been a manifest error of fact or law, or if there is newly discovered evidence that was not previously available." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021). A motion to correct errors "does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." *A&C Constr. & Installation, Co. WLL v. Zurich Am. Ins. Co.*, 963 F.3d 705, 709 (7th Cir. 2020) (quoting *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000)). This Court's "opinions are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988).

## II. Plaintiffs Waived Any Objection to the Fee Award

The most interesting bit of information to come out of the briefing on Plaintiffs' motion was what happened after this Court's order awarding fees. Four days after this Court's order, Defendant's counsel, Ted Storer, emailed Attorney Weldy stating that Defendants "are ready to satisfy the attorney fee award issued by Judge Brady." (ECF No. 282-1 at 5). After asking how Attorney Weldy would like to receive the check, Attorney Storer wrote:

> Second, upon doing so, do you have any concerns about me filing a notice with the district court that the judgment and the attorney fee award have been satisfied? The clerk has indicated their preference that I not pay any sums in satisfaction to the clerk. I do not want to violate any of the terms of our agreement, so I am contemplating a statement that the "Defendants have paid all sums due under the judgment entered (date) [Doc 260] and the order on attorney fees (July 16, 2021)[Doc 278]", including any statements necessary by statute or the FRCP.

(*Id*. at 6). Attorney Weldy responded, "[y]our proposed Satisfaction of Judgment sounds fine." (*Id*. at 5). Attorney Storer mailed a check for $73,836.09, accounting for attorney fees and costs, one week later. (*Id*. at 8). In the cover letter accompanying the check, Attorney Storer again noted that he "intend[ed] on filing a notice of satisfaction as discussed in the email exchange." (*Id*.). The check was paid by Defendant's bank the next day. (*Id*. at 2). One week after mailing the check,

Attorney Storer filed the Notice of Satisfaction. (ECF No. 279). This motion was filed nine days later. (ECF No. 280).

These facts raise a question: does the law permit a challenge to an attorney fee award when the prevailing party has accepted a check for the award, deposited those funds in his trust account, and consented to the filing of a notice of satisfaction? Generally speaking, "where a judgment is appealed on the ground that the damages awarded are inadequate, acceptance of payment of the amount of the unsatisfactory judgment does not, standing alone, amount to an accord and satisfaction of the entire claim." *United States v. Hougham*, 364 U.S. 310, 312 (1960). That said,

> when a party accepts the benefits of a judgment under circumstances which indicate an intention to finally compromise and settle a disputed claim, an appeal may be foreclosed. In such a case, it is "the mutual manifestation of an intention to bring the litigation to a definite conclusion upon a basis acceptable to all parties" which bars a subsequent appeal, and not the fact, standing alone, that benefits under the judgment were accepted.

*United States for Use and Benefit of H & S Indus., Inc. v. F.D. Rich Co., Inc.*, 525 F.2d 760, 765 (7th Cir. 1975) (quoting *Hawaiian Paradise Park Corp. v. Friendly Broad. Co. Inc.*, 414 F.2d 750, 752 (9th Cir. 1969)).

The problem for Plaintiffs is that the acceptance of the funds does not "stand alone" here. On top of accepting Defendant's payment, Attorney Weldy expressly consented to the filing of the Notice of Satisfaction, approved the language of the Notice proposed by Attorney Storer, and did not object once the Notice was filed. This strikes the Court as a manifestation of an intention to bring the litigation to a definite conclusion on a basis acceptable to the parties. Indeed, outside of Attorney Weldy filing the Notice of Satisfaction himself, something unnecessary given Attorney Storer's stated intention to do so, the Court struggles to imagine conduct that would more signify an intent to conclude this litigation.

It is not as if payment was accepted for part of the attorney fee award while reserving his right to contest the rest. *Auburndale State Bank v. Dairy Farm Leasing Corp.*, 890 F.2d 888, 893 (7th Cir. 1989). Nor is it a case in which both parties expressed an intent to appeal the attorney fee award and payment was made solely to avoid the accruing of interest. *F.D. Rich*, 525 F.2d at 765. Rather, Attorney Weldy manifested every intent to accept $70,000.00 as comprehensive payment for the attorney fee award until, a week after the Notice of Satisfaction, he didn't. The Court finds this change of heart to be too late.

### III. Plaintiffs Have Shown No Manifest Error of Fact or Law[1]

Waiver aside, nothing in Plaintiffs' motion leads the Court to believe that its prior order contains a manifest error of fact or law. Plaintiffs object to several of the Court's calculations, and the Court will address each in turn.

#### A. *Adequacy of Counsel*

The Court disallowed 31.1 hours of attorney time devoted to briefing Attorney Weldy's competency as class counsel. In the Court's view, this time did not advance Plaintiffs' case but advanced Attorney Weldy's interest in serving as class counsel. Not so, Attorney Weldy now argues. Instead, he claims that, had he not prevailed, "seven (7) Plaintiffs would have received nothing." (ECF No. 281 at 3).

First, this argument was not raised during the initial briefing on Attorney Weldy's fee request. Indeed, Attorney Weldy made no attempt to salvage these hours after they were challenged by Defendants. (*See* ECF No. 269 at 6). It is inappropriate to raise this argument now. *A&C Constr. & Installation, Co. WLL*, 963 F.3d at 709.

---

[1] The Court will focus on the manifest error of law or fact because Plaintiffs have pointed to no newly discovered evidence or intervening change in the law.

More to the point, the Court rejects Attorney Weldy's position that only he could collect for these Plaintiffs. It is true that, had the Court rejected Attorney Weldy as class counsel, a class could not have been certified with Attorney Weldy at the helm. *See* Fed. R. Civ. P. 23(c)(1)(B), (g); ECF No. 35. But that does not mean that a class could have never been certified. Instead, it would have meant only that Plaintiffs would have had to retain new counsel. *See, e.g., Van v. Ford Motor Co.*, 2018 WL 4635649, at *6 (N.D. Ill. Sept. 27, 2018) (denying motion for class certification without prejudice because of inadequacy of class counsel). The Court stands by its decision to exclude these hours and concludes that no manifest mistake of law or fact was made.

**B.**     ***Damage Calculations***

The motion next challenges the Court's decision to cut 21.4 hours of paralegal time and 14.2 hours of attorney time spent creating damage spreadsheets. Attorney Weldy spends nearly five pages detailing the work of his paralegal and himself, ultimately concluding that all hours devoted to this task were "required to prosecute the case and not commit malpractice." (ECF No. 281 at 4).

No part of Plaintiffs' brief shows its second bite-at-the-apple nature more than this one. Attorney Weldy's office took no effort to detail the work when it was "billed." His paralegal billed for "entering information into database," "entering data into excel sheet," and other similarly unenlightening descriptions. (*See, e.g.*, ECF No. 263-2 at 17). For his part, Attorney Weldy recorded his time as "[r]eview documents produced; finalize damage spreadsheets; calculate damages for class members." (*Id.* at 23). When time is recorded in this kind of vague, perfunctory manner, the party requesting fees runs the risk that all such time will be excluded. *Montanez v. Simon*, 755 F.3d 547, 556–57 (7th Cir. 2014).

5

The initial fee request provided little more detail. Unlike the current motion, Attorney Weldy's discussion of the time devoted to damage calculation spanned just two sentences. (ECF No. 274 at 8). That "discussion" identified only two bases to support the requested fees: the calculations had to be "redone on multiple occasions" because the initial calculations were wrong; and Attorney Weldy found out new facts during the depositions of his own clients that required recalculation. (*Id.*). The Court struggled at first, and struggles now, to understand why Attorney Weldy's calculation errors and failures to adequately develop facts related to his own clients should be paid for by Defendants. The Court seriously doubts whether time spent fixing counsel's own errors would have been billed to a paying client. *Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 553 (7th Cir. 1999) ("the court should disallow . . . hours spent on tasks that would normally not be billed to a paying client").

In any event, if five pages of explanation were necessary to verify Attorney Weldy's fee claim, they could and should have been provided to the Court before now. *A&C Constr. & Installation, Co. WLL*, 963 F.3d at 709. The motion has identified no manifest error of fact or law in the Court's initial order, and that order will stand.

**C.     *Summary Judgment***

Plaintiffs' motion provides no basis for the Court to modify its decision to cut 31.8 hours from the time billed for preparing the summary judgment briefs. Attorney Weldy points to the need to revise the facts in the second brief, but the Court already acknowledged this in its initial order. (ECF No. 278 at 10). He claims that drafting summary judgment briefs "takes a lot of time." (ECF No. 281 at 8). The Court agrees; it allowed sixty hours to be included in the lodestar calculation. No manifest error of fact or law has been shown.

D.   *Modification to the Lodestar Calculation*

The motion spends most of its efforts challenging the Court's reduction of the lodestar calculation from around $135,000.00 to $70,000.00 based on the result obtained. That challenge takes two forms. Attorney Weldy first argues that the individual settlements were "good or great," and even "excellent" results. He then downplays the importance of the decertification. The Court finds no merit in either argument.

Let's examine the individual settlements first. Attorney Weldy argues:

> Ten out of 11 Plaintiffs got all of their unpaid wages owed during the two-year statute of limitations. Nine (9) out of 11 Plaintiffs got an equal amount in liquidated damages and one (1) Plaintiff got 90% of his liquidated damages. Once again, these are great results. Eight (8) of the 11 Plaintiffs got some of their unpaid overtime wages during the "willful" third year or some of their bad faith liquidated damages. These again are great results. Even Mr. Pepple who only received half of his unpaid wages obtained a "good" result because all of his damages fell in the "willful" third year and getting any settlement amount for this period is a "win."

(ECF No. 281 at 13). This argument is difficult to square with the amounts each Plaintiff received from the settlement when compared to the amounts claimed at summary judgment. As a percent of damages claimed at summary judgment, Plaintiffs collected[2]: 69%, 46%, 38%, 17%, 73%, 67%, 71%, 60%, 58%, 67%, and 55%. (*Cf.* ECF No. 255-1, ECF No. 222 at 42). These rather modest percentages tell the Court that either the summary judgment damages were inflated, or Attorney Weldy's current claims of success are. Neither scenario supports giving Attorney Weldy more money.

But even if settling for 17% of your damages could be described as an "excellent result," a percentage analysis buries the lede. Plaintiffs received anywhere from just less than $700.00 to $15,000.00, with most receiving in the $5,000.00 to $6,000.00 range. These are not insignificant

---

[2] The Court will omit settlement amounts and will not assign recovery percentages to specific Plaintiffs to respect the parties' confidentiality agreement.

7

amounts, but it took *seven years* to collect them. Stated another way, Julius Caesar conquered Gaul in less time than it took counsel to collect small claims amounts for his clients. Plaintiffs may believe these were excellent results, but the Court does not.

These amounts underscore the existential truth that Plaintiffs yearn to avoid: this case was always about the class and collective actions, and never about the individual claims. To not just put lipstick on the pig but to send it for a full spa day, Plaintiffs now assert that "[h]aving this case decertified was not a lose [sic] for Plaintiffs." Rather, losing the twelve class members that did not pursue individual claims "was good for the prosecution of the remaining claims" because "these 12 former clients did not demonstrate that they wished to pursue their claims and cooperate in the prosecution of their claims." (ECF No. 281 at 14–15).

Whatever hindsight truth these statements have, they ignore the fact that two out of three counts in Plaintiffs' Amended Complaint sought class or collective relief. (ECF No. 8). They ignore the fact that Plaintiffs fought decertification not just with a response, but also a sur-reply. (ECF No. 168, 175). Finally, they ignore the fact that the number of Plaintiffs following decertification was less than half what it was before decertification, and one-sixth the number that Plaintiffs represented to the Court when the class and collective actions were first certified. (ECF No. 59 at 2). The decertification of the class and collective actions, along with the modest individual recoveries, more than supports the modification of the lodestar calculation. *Barfield v. New York City Health and Hosp. Corp.*, 537 F.3d 132 (2d Cir. 2008).

IV.  **Conclusion**

For these reasons, Plaintiffs' Motion to Amend Findings and Motion to Correct Errors (ECF No. 281) is DENIED.

SO ORDERED on September 22, 2021.

                                           s/ Holly A. Brady  
                                          JUDGE HOLLY A. BRADY  
                                          UNITED STATES DISTRICT COURT